## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| LAWYER H. DENSON, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 3:04-CV-337-M |
| | § | |
| MEADWESTVACO CORP., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant MeadWestvaco's ("Mead") Motion for Summary

Judgment filed on April 27, 2005, the Plaintiff's Motion to Strike filed on May 27, 2005, and the

Defendant's Motion to Strike filed on June 14, 2005. Upon consideration of the Motion,

Response, Reply, the evidence submitted by the parties, and the law applicable to the issues

before the Court, the Court **GRANTS** the Defendant's Motion for Summary Judgment and

**DENIES** the Plaintiff's and Defendant's Motions to Strike.

I. Background Facts

Plaintiff Lawyer Denson ("Denson") worked at Mead's paper product manufacturing

facility in Garland, Texas. Over his nearly thirty-year tenure with the company, Denson worked

his way up from a utility worker to a High Speed Machinery Supervisor.  On March 25, 2003,

Krissi Amezquita ("Amezquita") made a formal complaint under Mead's anti-harassment policy

alleging that she had been sexually harassed by Denson, her supervisor.

1

Two days later, when Denson returned from vacation, Richard Meyer ("Meyer"), Denson's immediate supervisor, and Carmen Goode ("Goode"), the Human Resources Manager at the Garland facility, informed Denson of Amezquita's allegation.  They informed Denson that he would be suspended, with pay, pending the completion of an investigation of Amezquita's complaint. Denson denied sexually harassing Amezquita and claimed that Amezquita was retaliating against him because he had disciplined her earlier that week.

Goode interviewed four of Amezquita's co-workers. All four corroborated Amezquita's allegations. Goode discussed the investigation findings with Mead's Manager of Human Resources Services, Charlene Goeglein ("Goeglein"), Plant Manager Owen Fox ("Fox"), and Meyer. Goode, Goeglein, Fox, and Meyer decided to discharge Denson.  Denson was informed on April 11, 2003, that he was being terminated for violating Mead's sexual harassment policies.

On February 17, 2004, Denson filed a Complaint against Mead, alleging race and age-based discrimination, retaliation, and wrongful discharge pursuant to the Age Discrimination in Employment Act 29 U.S.C. § 621, *et seq.* ("ADEA"); the Civil Rights Act of 1964 and 1991 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); and Texas common law (the "*Sabine Pilot* claim"). Denson claims he was terminated because of his age, 47, and his race, African-American. He also claims that Mead terminated him in retaliation for his making a phone call to the company "hotline," complaining about age and race discrimination, and because he refused to commit illegal acts. Denson contends the company's investigation was a sham, and that the sexual harassment claim was a pretext for the real, discriminatory reasons for his termination or, in the alternative, that discrimination was at least a motivating factor in Denson's termination.

The Defendant filed a Motion for Summary Judgment on all of the Plaintiff's claims.

## II. Evidentiary Findings

As a preliminary matter, the Court has considered the Motions to Strike. These motions are **DENIED**. The parties complain that several documents submitted in support of, and in opposition to, the Motion for Summary Judgment contain hearsay. However, most of the evidence in question is not presented for the truth of the matter asserted; rather, it is submitted to show the Defendant's employees' state of mind when Denson was terminated. The parties complain that other evidence submitted is speculative or conclusory. In evaluating Defendant's Motion, the Court has disregarded any speculative, conclusory, or hearsay evidence offered for the truth of the matter asserted.

## III. Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (citing *Fed. R. Civ. P.* 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999)). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." *Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986).

Once the moving party has made an initial showing, the burden shifts to the non-movant to establish that there is a genuine issue of material fact for trial. *Id*. at 323-24. The non-movant must present specific facts which demonstrate that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Mere allegations made in the pleadings are not

sufficient to withstand a motion for summary judgment. *Id*. In other words, conclusory

statements, speculation, and unsubstantiated assertions will not suffice. *Id*. at 248-50; *Abbott v.*

*Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993).

IV. Race and Age Discrimination

Discrimination claims have traditionally been analyzed under different frameworks,

depending upon whether the plaintiff supports a claim with direct or circumstantial evidence. *See*

*generally Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414-15 (5th Cir. 2003).

Circumstantial evidence cases alleging pretext were analyzed under the *McDonnell Douglas*

burden-shifting framework. *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

Cases involving direct evidence were analyzed under the *Price Waterhouse* mixed-motives

approach. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). "Under the pretext

prong of the *McDonnell Douglas* analysis, the plaintiff aims to prove that discriminatory motive

was the determinative basis for the termination, [and] under the mixed-motives framework, the

plaintiff can recover by demonstrating that the protected characteristic was a motivating factor in

the employment decision." *Id*. at 310. However, recent rulings by the Supreme Court and the

Fifth Circuit recognized the merging of the mixed-motive and pretext theories and created a

"modified *McDonnell Douglas* approach":

> The plaintiff must still demonstrate a prima facie case of discrimination; the defendant
> must articulate a legitimate, non-discriminatory reason for its decision to terminate the
> plaintiff; and if the defendant meets its burden of production, the plaintiff must then offer
> sufficient evidence to create a genuine issue of material fact either (1) that the defendant's
> reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2)
> that the defendant's reason, while true, is only one of the reasons for its conduct, and
> another motivating factor is the plaintiff's protected characteristic (mixed-motives
> alternative).

4

*Rachid*, 376 F.3d at 312; *see also Desert Palace v. Costa*, 539 U.S. 90 (2003). In any case, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Denson rightly contends that this case should be analyzed under the modified *McDonnell Douglas* approach.  Mead will not be entitled to summary judgement if there is an issue of material fact that the sexual harassment claim was a pretext or if despite the veracity of the sexual harassment claim, discrimination was still a motivating factor in the decision to discharge Denson.

a. Prima Facie Case

Denson must first show a prima facie case of discrimination. To do so, Denson must prove that (1) he is a member of a protected class; (2) he was qualified for the position; (3) despite his qualifications, he was subjected to an adverse employment action; and (4) after his termination, the position remained open and was ultimately filled by a person outside the protected class. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). African-Americans and individuals at least forty years of age are members of protected classes. 42 U.S.C. § 1981; 29 U.S.C. § 631(a).

Denson, an African-American man, was over the age of forty when he was terminated.  It

is undisputed that Denson was qualified for his position. It is also undisputed that he was

replaced by Virginia Garcia, a thirty-two year old Hispanic woman.  Therefore, Denson has made

out a prima facie case of age and race discrimination.

b. Pretext Burden

Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to

articulate a legitimate, nondiscriminatory reason for the employee's termination. *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This is a burden of production, not

persuasion, and cannot involve a credibility assessment. *Reeves,* 530 U.S. at 142.  If the

defendant produces a legitimate reason for the employment decision, the burden shifts back to

the plaintiff to show that the defendant's reason was merely a pretext for discrimination, or that

the plaintiff's protected characteristic was a motivating factor in the employer's decision. *See*

*McDonnell Douglas*, 411 U.S. at 804; *Rachid*, 376 F.3d at 312.

Mead offers a legitimate, nondiscriminatory reasons for its action – it reasonably believed

that Denson violated the company's sexual harassment policy.  Mead arrived at this conclusion

based on the investigation conducted by Goode and Meyer of Amezquita's complaint. This

explanation satisfies the burden of production and thus, the burden shifts back to Denson to

demonstrate that the reason was a pretext for discrimination or that discrimination was a

motivating factor in Mead's decision to terminate him. *Rachid*, 376 F.3d at 312.

Denson contends that the investigation was a sham and that Goode, Meyer, Goeglein, and

Fox used the sexual harassment claim as a pretext for discrimination. In the alternative, Denson

claims that his age and race were at least motivating factors in his termination.  Denson offers

6

five bases for his allegation that the investigation was a sham: (1) Amezquita's claim was patently false; (2) Goode had a history of making incomplete investigations; (3) Mead had a pattern of suspending, not terminating, supervisors accused of sexual harassment; (4) Denson gave Goode and Meyer the names of four co-workers who would corroborate his story, but they failed to interview any of the four; and (5) Goode, Meyer, and Fox misconstrued a letter in Denson's file to make it appear as if he had been cited for sexual harassment in the past.

When determining whether a decision to terminate was made in good faith, the relevant inquiry for the Court is not whether the sexual harassment claim was ultimately false but, "whether the decision makers believed at the time of discharge that the employee was guilty of harassment and, if so, whether this belief was the reason for discharge." *Waggoner v. Garland*, 987 F.2d 1160, 1163 (5th Cir. 1993). An incorrect determination by the defendant is irrelevant, "as long as its belief, though erroneous, was the basis for the termination." *Cortinas v. Health Cent.*, No. 3:04-CV-1032-P, 2005 U.S. Dist. LEXIS 11726, at *10 (N.D. Tex. June 14, 2005) (quoting *De Anda v. St. Joseph's Hosp.*, 671 F.2d 850, 854 n.6 (5th Cir. 1982)); *see also Jones v. Flagship Int'l*, 793 F.2d 714, 729 (5th Cir. 1986).

Further, it is not sufficient for the plaintiff to present evidence that the investigation was imperfect, incomplete, or that it potentially reached an erroneous conclusion. *Pineda v. United Parcel Serv.*, 360 F.3d 483, 489 (5th Cir. 2004). A plaintiff must show that the defendant did not reasonably believe the sexual harassment claim and that discrimination was the real reason for the termination. *See id*. By refusing to second-guess the results of an imperfect investigation, courts encourage employers to investigate complaints against at-will employees before deciding whether or not to discharge them. *See Wal-Mart Store, Inc. v. Canchola*, 121 S.W.3d 735, 740

7

(Tex. 2003).

Denson provides a significant amount of evidence that Amezquita lied about his sexually harassing her.  However, the issue is not whether Amezquita's allegations were false. Mead has potential liability if the decision-makers -- Goode, Meyer, Goeglein, and Fox -- did not reasonably believe her allegations after their investigation, and still decided to terminate Denson. There is no evidence to dispute Defendant's assertion that its employees reasonably believed Amezquita's allegations. Goode interviewed four of Amezquita's co-workers and all four corroborated her charges.  Goode also became aware of a letter in Denson's file from July 11, 1990: "A complaint has been issued, once again, about your conduct or suggestions to female employees . . . If an incident of this nature, or company policy is violated in the future, extreme disciplinary action will be taken.  This action will be in the form of suspension, or termination." Although the meaning of this letter is now disputed, Goode avers that she understood it to be documentation of a previous allegation of sexual harassment.

The key to determining whether a good faith investigation has taken place is the determination of what information the company possessed when it made its termination decision - not the underlying veracity of that information. The investigation conducted by Goode may have been incomplete, but it is not the position of the court to second-guess an imperfect investigation. Goode, Meyer, Goeglein, and Fox had a reasonable belief in the veracity of the sexual harassment allegation. Denson's accusations to the country amount to mere speculation and are insufficient to create a genuine issue of material fact. Thus, Denson cannot prevail on a pretext theory of discrimination.

8

c. Evidence of Discrimination

Denson may still be able to prevail if he can establish that discrimination was a motivating factor in the decision to terminate him. To prevail on a mixed-motives theory, the plaintiff must demonstrate that discrimination was the "motivating factor" in the decision to terminate. *Rachid*, 376 F3.d at 312. In other words, the mixed-motives analysis will only apply "where the evidence is sufficient to allow a trier to find both forbidden and permissible motives." *Id.* (quoting *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999)).

Denson presents no evidence of race discrimination. He speculates that Meyer was grooming a young, Caucasian man to take Denson's position. However, that man did not obtain Denson's position after the termination. Further, there is no evidence of any remarks about Denson's race by any of the decision-makers. Denson also contends that it is obvious that discrimination was at least a motivating factor in Mead's decision to terminate him because Mead routinely suspended supervisors against whom allegations of sexual harassment were made, but never fired them. However, no evidence is presented that the supervisors who were suspended were, as Denson's claims suggest, not members of a protected class.

The only evidence that could conceivably establish indicia of discrimination are age-related statements Meyer made to Denson. Comments in the workplace may serve as sufficient evidence of discrimination if they are (1) related [to the protected class of persons of which the plaintiff is a member]; (2) proximate in time to the termination; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue. *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999) (quoting *Brown v. CSC Logic Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)). Comments that are "vague and remote in time" are

insufficient to establish discrimination. *Brown*, 82 F.3d at 655; *see E.E.O.C. v. Tex. Instruments, Inc.*, 100 F.3d at 1181 ("In order for an age-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.").

Denson offers two allegedly discriminatory statements made by Meyer to Denson. On several occasions from three to six months before Denson's termination, Meyer told Denson, "You're getting too old," and "I am going to get me a young man." The Fifth Circuit has held that similar comments are merely "stray remarks" and are insufficient to establish age discrimination. *Waggoner*, 987 F.2d at 1166 (a statement by a decision maker that a "younger person could do faster work" and referencing the plaintiff as an "old fart" were found to be mere stray remarks).

Meyer's comments do not show age discrimination toward Denson. The comments were made three to six months before the employment decision and are not related to Denson's discharge. Taken as a whole, the comments alone would not allow a reasonable jury to conclude that age was an "impermissible factor" in the decision to terminate him. Thus, Denson has failed to raise an issue of material fact that discrimination was a motivating factor in the decision to terminate, or even that it was a factor at all. Therefore, Denson cannot prevail on his discrimination claims under a mixed-motives analysis. Mead's Motion is **GRANTED** as to Denson's age and race discrimination claims.

V. Retaliation

Denson contends that he was discharged from his position at Mead in retaliation for his

reporting age and race discrimination to the company hotline on March 27, 2003.  To pursue a

retaliation claim, a plaintiff must first demonstrate a prima facie case of retaliation. *Septimus,*

399 F.3d at 610.  To establish a prima facie case of retaliation, the plaintiff must show (1) that he

engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that a

causal link existed between the protected activity and the adverse action. *Gee v. Principi*, 289

F.3d 342, 345 (5th Cir. 2002). Once the plaintiff makes a prima facie case "the burden shifts to

the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action."

*Pineda*, 360 F.3d at 487.  If the defendant meets this burden, then the plaintiff must show that the

employer's stated reason is a pretext for the retaliatory purpose. *Id*.

The parties dispute whether Denson has established a prima facie case. It is undisputed

that an adverse employment action occurred. However, it is unclear whether Denson engaged in a

protected activity, and if he did, whether a causal link exists between the protected activity and

his termination. Denson states that he made a call, while he was suspended, to the company

"hotline" and complained about age and race discrimination.  He further contends that Goode,

Meyer, and Fox were made aware of the substance of these calls and decided to discharge him in

retaliation for his complaints. Although Goode, Meyer, and Fox were given a report of Denson's

call by Pinkerton Compliance Services, a third-party monitoring company, that report did not

mention age or race discrimination complaints. Nevertheless, for the purposes of this analysis,

the court will assume that Denson engaged in the protected activity of reporting age and/or race

discrimination.

Assuming that Denson complained about age and race discrimination, he still must

establish that the protected activity and the adverse employment action are not "wholly

11

unrelated." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996). If Goode, Meyer, or Fox did not know about Denson's discrimination complaints before the decision to discharge him, a causal link cannot be established. Denson's argument that they knew of his complaints, is mere speculation and does not raise a material fact issue sufficient to withstand summary judgment. Therefore, the Defendant's Motion for Summary Judgment is **GRANTED** as to Denson's retaliation claim.

VI. *Sabine Pilot*

In Texas, the employment at-will doctrine recognizes the right of an employer to terminate at-will, and without cause, the employment of any individual who is employed for an indefinite term. *E. Line & R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888).  The Supreme Court of Texas has carved out one narrow public policy exception to the employment at-will doctrine. *Sabine Pilot v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). The *Sabine Pilot* exception allows an employee to bring a wrongful discharge claim against an employer when the sole reason for the employee's termination was his refusal to perform an illegal act. *Id*. In order to establish a prima facie case of wrongful termination under *Sabine Pilot*, the plaintiff must prove that (1) he was required to commit an illegal act which carries criminal penalties; (2) he refused to engage in the illegal act; (3) he was discharged; and (4) the sole reason for his discharge was his refusal to commit the illegal act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003); *Boyce v. Bank of Am. Tech.*, No. 3:03-CV-0770-8, 2004 U.S. Dist. LEXIS 22751, at *32 (N.D. Tex. Nov. 10, 2004).

A key component of the *Sabine Pilot* exception is that the wrongful discharge claim is the

sole reason for discharge. It has been consistently held that, "an employee who alleges wrongful discharge for refusing to perform a criminal act cannot advance additional claims." *Pease v. Pakhoed*, 980 F.2d 995, 997 n.1 (5th Cir. 1993); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 953 (5th Cir. 1994); *Hancock v. Express One Intern., Inc.*, 800 S.W.2d 634, 636 (Tex. App.--Dallas 1990, writ denied). In addition to his claim of wrongful termination, Denson advances claims of age discrimination, race discrimination, and retaliation. This mistake in pleading alone warrants a grant of summary judgment on the *Sabine Pilot* claim. *See e.g., Gutherie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (upholding the district court's decision to dismiss wrongful discharge claim because plaintiff also pleaded a claim of age discrimination).

However, even if Denson had properly pleaded the wrongful discharge claim in the alternative, the claim still fails. "An employer who discharges an employee both for refusing to perform an illegal act and for a legitimate reason cannot be liable for wrongful discharge." *Richards v. Kmart Corp.*, No. 3:99-CV-2722-P, 2001 U.S. Dist. LEXIS 2991, at *9 (N.D. Tex. March 19, 2001) (quoting *Tex. Dept. of Human Serv. v. Hinds*, 904 S.W.2d 629, 622 (Tex. 1995)).  Mead's explanation for Denson's termination was that he violated Mead's sexual harassment policy, and the evidence supports that explanation. Therefore, Denson's *Sabine Pilot* claim must fail as a matter of law. The Defendant's Motion for Summary Judgment is **GRANTED** as to Denson's wrongful termination claim.


VII. Conclusion

Mead is entitled to summary judgment on all of Denson's claims -- for age and race-

based discrimination, retaliation and wrongful discharge. Accordingly, the motion for summary

judgment is **GRANTED**.

      **SO ORDERED.**

September 8, 2005.

_____
Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE

14